```
1                    IN THE UNITED STATES DISTRICT COURT
                     IN AND FOR THE DISTRICT OF DELAWARE
2
      SYSTEMATION, INC.,                   : CIVIL ACTION
3                                          :
                Plaintiff,                 :
4                                          :
           v                               :
5                                          :
      HART & COOLEY, INC.,                 :
6                                          : NO. 11-142 (LPS)
                Defendant.                 :
7
                          Wilmington, Delaware
8                       Wednesday, April 20, 2011
           MOTION FOR PRELIMINARY INJUNCTION (JUDGE'S OPINION)
9
                                 - - -
10
      BEFORE:        HONORABLE LEONARD P. STARK, U.S.D.C.J.
11
      APPEARANCES:                    - - -
12
                     CONNOLLY BOVE LODGE & HUTZ, LLP
13                   BY:  KRISTEN HEALEY CRAMER, ESQ.

14                        and

15                   BREINER & BREINER, L.L.C.
                     BY:  THEODORE A. BREINER, and
16                        JENNIFER A. HARCHICK, ESQ.
                          (Alexandria, Virginia)
17
                             Counsel on behalf of Systemation, Inc.
18
                     BARNES & THORNBURG, LLP
19                   BY:  DAVID M. POWLEN, ESQ.

20                        and

21                   BARNES & THORNBURG, LLP
                     BY:  LYNN C. TYLER, ESQ.
22                        (Indianapolis, Indiana)

23                           Counsel on behalf of Hart & Cooley, Inc.

24
                                  Brian P. Gaffigan
25                                Registered Merit Reporter
```

1                              - oOo -

2                      P R O C E E D I N G S

3              (REPORTER'S NOTE:  The following judge's opinion

4      was given in open court, beginning at 1:06 p.m.)

5              THE COURT:  You can have a seat.

6              Well, as I had hoped, I have been able to pull

7      things together in order to come to a decision on the

8      plaintiff's motion for preliminary injunction.

9              Some of what I say will not be as neatly stated

10     as it would as if we took some time to write a finished

11     opinion.  I think given the nature of the issues put before

12     me, you are entitled to an answer, and so here it is:

13             First, let me point out the legal standards and

14     note, of course, that any statements that the Court makes in

15     the context of a preliminary injunction are preliminary and

16     subject to further development after discovery and perhaps

17     trial.

18             A preliminary injunction, of course, is

19     extraordinary relief and the burden of proof is on the movant.

20             Specifically, a plaintiff seeking a preliminary

21     injunction must establish that it is likely to succeed on

22     the merits; that it is likely to suffer irreparable harm in

23     the absence of preliminary injunctive relief; that the

24     balance of equities tips in its favor; and that an

25     injunction is in the public interest.

1           Notwithstanding that these are the same factors

2     that are always considered in context of a preliminary

3     injunction, it does bear emphasis that a patentee's

4     entitlement to an injunction is a matter largely within the

5     discretion of the trial court and, therefore, of course,

6     each case is different and is taken on its own facts and its

7     own record.

8           Let me now turn to each of those factors as they

9     apply here.

10          The first issue, of course, is whether the

11    plaintiff has established a likelihood of success on the

12    merits.

13          Here, the Court finds that the plaintiff has

14    established a likelihood of success on the merits.

15          The issue is primarily the potential infringement

16    of the '100 patent.  The plaintiff alleges both literal

17    infringement and infringement by the doctrine of equivalents.

18          Literal infringement turns on the proper

19    construction of the claim term "integral corner" and that

20    claim construction dispute received much attention from the

21    parties in their papers as well as here today.

22          The Court has concluded it is unnecessary to

23    construe this claim term even preliminarily.  That is

24    because the Court finds that the plaintiff has established a

25    likelihood of success of demonstrating infringement by the

1    doctrine of equivalents.

2              In order to establish infringement under the

3    doctrine of equivalents, there must be an insubstantial

4    difference between the accused system and the corresponding

5    element of the patent in suit.  That, of course, is from

6    the Warner-Jenkinson decision.

7              As with literal infringement, infringement

8    under the doctrine of equivalents is analyzed on an

9    element-by-element basis.

10             Here, the Court is persuaded that the

11   projections on the accused product, even assuming for

12   argument's sake that they are outside of the literal

13   integral corner as claimed, they, in fact, are only

14   approximately .35 inches outside of that corner even on the

15   defendant's proposed construction.  That, in the Court's

16   view, is an insubstantially different location from the

17   projections being on the integral corner itself.  Therefore,

18   it is likely that the plaintiff will prove infringement

19   under the doctrine of equivalents.

20             In response to this argument, the defendant

21   primarily relies on prosecution history estoppel, arguing

22   that Systemation surrendered during the prosecution of

23   the patent all equivalence related to the limitation in

24   question, but the Court disagrees with this contention of

25   the defendant.

1          To determine whether prosecution history

2    estoppel precludes the application of the doctrine of

3    equivalents, the Court performs the analysis required under

4    the Festo decision.

5          The first question under Festo is whether an

6    amendment filed with the PTO narrowed the literal scope of

7    the claim.

8          Here, the Court will assume for purposes of this

9    analysis that the amendment was narrowing.

10         The second question is then, if the accused

11   infringer establishes that the amendment was a narrowing

12   one, was the reason for that amendment a substantial one

13   relating to patentability?

14         The Court believes that, here, it was.

15         But that takes us to the third question under

16   Festo, which addresses the scope of the subject matter

17   surrendered by the narrowing amendment.

18         Festo imposes a presumption that the patentee

19   has surrendered all of the territory between the original

20   claim limitation and the amended claim limitation, but the

21   patentee may rebut that presumption and total surrender in

22   three ways by demonstrating either; first, that the alleged

23   equivalent would have been unforeseeable at the time of the

24   narrowing amendment; second, that the rationale underlying

25   the narrowing amendment were no more than a tangential

1      relationship to the amendment in question; or, third, there

2      was some other reason suggesting that the patentee could not

3      reasonably have been expected to have described the alleged

4      equivalent.

5            Here, the Court finds and focuses on the second

6      criteria for rebutting the Festo presumption, that is,

7      tangential relationship.  There, the Court asks whether the

8      reason for the narrowing amendment was peripheral or not

9      directly relevant to the alleged equivalent.  Here, the

10     Court finds that the amendment had only a tangential

11     relationship equivalent in question.  Simply put, the

12     amendment had nothing to do with the location of the

13     projections relative to the corner.

14           The claim limitation at issue, of course, reads

15     "each of said legs and said corner having projections

16     projecting therefrom in a common direction and being of a

17     height to hold adjacent plates parallel and spaced, thereby

18     preventing nesting and permitting sliding single plates off

19     the bottom of a stack of plates."

20           It's that first portion of the quoted language,

21     "each of said legs and said corner having projections

22     projecting therefrom in a common direction" that is at

23     issue here and in the doctrine of equivalents analysis in

24     particular, and that language was simply unaffected by the

25     amendment that occurred in the prosecution here.

1          Thus, the patentee has successfully rebutted the

2     presumption and prosecution history does not apply.

3          The Court has made this finding and reached this

4     conclusion even though, admittedly, the plaintiff did not

5     present its argument in the language of the Festo framework.

6     But the Court has been able to apply the arguments that

7     were made to it and the facts in this record to the Festo

8     framework and reaches the conclusion that it has reached.

9          The defendant also relies on the Federal

10    Circuit decision in Sage, but the Court finds Sage to be

11    distinguishable for the reasons given by the plaintiff.

12    Here, unlike in Sage, the plaintiff is not trying to use the

13    doctrine of equivalents to read out claim limitations.

14    Instead, the plaintiff is using the doctrine of equivalents

15    to argue that even if the corner is located only where

16    the defendant contends it's located, the locations of the

17    projections are nonetheless equivalent to the locations of

18    being in the corner literally.

19          With respect to likelihood of success, a final

20    thing.  The Court needs to mention the defendant suggested

21    during argument today, in response to a question from the

22    Court, that it may eventually challenge the validity of the

23    '100 patent for lack of definiteness but that challenge

24    would be based on the plaintiff's proposed construction of

25    integral corner.  The Court has not reached that claim

1    construction issue yet, so here the Court finds that no

2    substantial question of validity of the patent has been

3    raised on this record at this time.

4            Turning now to the second element or the second

5    burden of the plaintiff to demonstrate irreparable harm, the

6    Court finds that plaintiff has shown that it will suffer

7    irreparable harm if an injunction is denied.

8            The plaintiff Systemation and the defendant

9    H&C are competitors.  The record supports Systemation's

10   contention that H&C's sales of infringing angle plates will

11   cause price erosion in the marketplace and damage H&C's

12   reputation and good will.

13           Both parties focused on Systemation's licenses

14   and licensees.  H&C is certainly correct that the fact that

15   Systemation licenses the patented invention cuts against

16   finding that harm to Systemation is not irreparable by money

17   damages.  However, the fact of those licenses is not

18   dispositive on the irreparable harm inquiry.

19           Moreover, the Court agrees with Systemation

20   that harm to its licensees and not just harm to Systemation

21   directly is properly considered in assessing harms in the

22   context of this motion.  For that principle or proposition,

23   the Court cites first the Atlas Powder decision that was

24   referenced by plaintiff during the argument, a case in which

25   the Federal Circuit acknowledged that a District Court's

1    finding of irreparable harm that took into account the

2    negative impact on the plaintiff's licensees and thereby

3    granted a preliminary injunction, that ruling by the

4    District Court was affirmed by the Federal Circuit.

5              There also are at least several District Court

6    decisions that are consistent with the Court's ruling today.

7    One is Concrete Washout, an Eastern District of California

8    decision in 2008.  Specifically, at 2008 Westlaw 5411965.

9              In that case, also granting a preliminary

10   injunction motion, the court found that irreparable harm

11   arose from "the chilling effect on plaintiff's potential

12   licensees who would be faced with competing with defendant

13   while it does not pay for or comply with its license."

14             The Court is also aware of a decision entitled

15   Judkins v HT Window Fashions Corp., found at 704 F.Supp.2d

16   470 in which the court for the Western District of

17   Pennsylvania entered a permanent injunction based in part on

18   a finding of irreparable harm to the plaintiff's licensing

19   business.

20             Here, again, the Court finds that both Systemation

21   and its licensees will be harmed with competition from H&C,

22   competition for which Systemation has not granted a license to

23   H&C.  Indeed, to the contrary, Systemation expressly declined

24   to license defendant or its predecessor twice and to deny the

25   preliminary injunction would be to effectively compel the

1    plaintiff to essentially license the defendant's competition

2    with the plaintiff.

3              There is also the unrebutted declarations from

4    the plaintiff or put in the record by the plaintiff that

5    prior unlicensed angle plates caused machines produced by

6    the plaintiff's licensees to jam and plaintiff and its

7    licensees fear that the same result will occur with H&C's

8    angle plates.  If that were to occur, that would further

9    irreparably harm Systemation and its licensees.

10             Turning next to the equities, the Court

11   concludes that giving Systemation business which is built

12   around the technology at issue here and Systemation's long

13   history of enforcing its patents on this technology,

14   balanced against H&C's only recent development and entry

15   into this market for the angle plates and the fact that H&C

16   has for a long time been on notice of Systemation's patents

17   and its enforcement efforts, the Court finds that the

18   balance of equities favors Systemation.

19             Finally, on the public interest, the Court finds

20   that this factor is essentially neutral as there is, of

21   course, a public interest in enforcing patent rights and also

22   a public interest in fostering competition, but certainly

23   there is nothing in the record about the public interest that

24   would cause the overall balance of the considerations to favor

25   the defendant.

1              Instead, as the Court has indicated, the overall

2     balance of factors, applying the law and the legal standards

3     to the record here, justify the merits granting the

4     preliminary injunction and, therefore, plaintiff's motion

5     for preliminary injunction is hereby granted and the Court

6     will be entering an order proposed by the plaintiff.

7              In terms of where we go from here, the Court

8     directs the parties to meet and confer with one another

9     and to submit to the Court, no later than next Friday,

10    April 29th, a proposed schedule for proceeding with the

11    remainder of this case.

12             Are there any questions about what the Court has

13    ruled, from the plaintiff?

14             MR. BREINER:  No, your Honor.

15             THE COURT:  And from the defense?

16             MR. TYLER:  Your Honor, will there be a bond

17    imposed?

18             THE COURT:  That is not an issue that has been

19    addressed.  If you want, you can go ahead and address that

20    now if you wish.

21             MR. TYLER:  Well, I just believe that there

22    should be a bond imposed because our client is being

23    enjoined.  It has made investments in this product and the

24    fact that if we ultimately do prevail, our attorney fees are

25    recoverable against the bond.  So for that reason, we would

1     ask that the Court set one.

2                    THE COURT:  Mr. Breiner.

3                    MR. BREINER:  Your Honor, we would request

4     the Court not set a bond.  I think counsel has indicated a

5     number of times in this case that the amount of damages or

6     amount of money they're going to lose is minimal, and I

7     don't think a bond is necessary.

8                    Systemation, in the event this Court's decision

9     is reversed or reversed on appeal, it has sufficient funds

10    to cover any attorney fees.  I don't think attorney fees are

11    going to be awarded in this case.  The standard is quite

12    high, as the Court is aware, 35 U.S.C. 285.

13                    Thank you, your Honor.

14                    THE COURT:  Any response?

15                    MR. TYLER:  Well, I'm not saying attorney fees

16    for an exceptional case or something.  I'm saying if we're

17    enjoined and that is reversed, then we're entitled to do

18    the attorneys fees.  I believe that is more as a matter of

19    course rather than anything they have done wrong.

20                    So I believe there should be a bond, at least

21    for that.  One of my points of the whole case has been this

22    shouldn't be a federal case.  Pardon the pun.  There is not

23    a lot of money at stake.  My client did have to make tooling

24    that is invested in this product, to make this product.  So

25    there is some nominal amount for that I believe also.

1          THE COURT:  Well, here is what we're going to

2     do.  I'm going to, as I indicated, sign and enter the order

3     proposed by plaintiff.

4          The issue of bond was not briefed.  The parties

5     are directed as part of their meeting and conferring to

6     discuss whether there should be a bond and, if so, in what

7     amount.  You are to get, along with your proposed schedule

8     next Friday, get me your either resolution as to the bond

9     issue or short letter briefs on your competing proposals,

10    and I'll take the issue up at that point.

11          Is there anything further from the defense?

12          MR. TYLER:  No.  Thank you, your Honor.

13          THE COURT:  Thank you all very much.

14          (Preliminary injunction hearing ends at 1:23 p.m.)

15

16

17

18

19

20

21

22

23

24

25